### GRANT & EASTER v. W. T. SMITH.

CHARGE OF COURT—ESTOPPEL.—A agreed with B that A would deliver specific articles to C, one-third of the expense of delivery to be defrayed by A and two-thirds by B. A was to receive from B, in addition, one-third of the money B should receive from C under an original contract between B and C for the delivery of the same articles. Through mistake, A delivered a portion of the articles to another party, who had a contract also with C, and who received pay for them. B, in a settlement with C, receipted to him in full for all claims growing out of the contract. B subsequently discovering the mistake in regard to the delivery, sued C for the amount of articles, alleging that C had received the benefit of them from the party to whom A had delivered through mistake, and C recovered judgment. Afterwards, in a suit by A against B, among other things, for his portion of the full amount which B should have received had no mistake occurred: *Held*—

1. That it was error to charge the jury that they could find any amount for A on account of the delivery of the articles, without also charging that B must have received pay for the same before he was liable, and that the jury could find only A's share under his contract of what money B actually received.

2. That it was error to charge that B's receipt to C, and the judgment in favor of C, estopped B from denying in this suit that he had possession and benefit of the articles so delivered by mistake, and that the jury should include said articles in making their verdict. Neither fact was necessarily conclusive in determining whether B had in fact received pay. Whether he actually did or did not, should have been left to the jury on all the facts.

3. Even a recovery by B in the former suit would not have determined A's right to recover of him, in the absence of evidence showing that he had collected the judgment.

APPEAL from Robertson. Tried below before the Hon. W. D. Wood.

W. T. Smith brought this suit on the 16th of September, 1873, to recover of appellants $1,529.24 and interest, claimed on a verbal contract alleged to have been made by Smith on the one part and Grant & Easter on the other, the terms of which contract appellee alleged to be substantially as follows: That he agreed to get up necessary hands, furnish necessary wagons and teams, " get out " railroad ties and haul them to the right of way of the International Railroad, and that he was to bear one-third of the expense incurred in performing his part of the contract; that appellants agreed on their part to pay him two-thirds of the expense he incurred in perform-ing his part of the contract, and one-third of the money they should receive for the ties gotten out by him and hauled to said right of way; that he complied with his part of the con-tract and got out and hauled to the right of way 6,680 ties, at an expense to him of $1,469.61; that appellants received pay for the 6,680 ties at the rate of 55 cents per tie, (total $3,674,) and there was due him according to their contract one-third of the amount they received for said ties, plus two-thirds of the amount he paid out as expenses, less $677.50 cash admitted to have been received.

Grant & Easter answered by general demurrer, general de-nial, and by special answer, setting up, substantially, that at the time appellee alleged his contract to have been entered into they (the appellants) were under a contract made between them and Douglas, Brown, Reynolds & Co., tie contractors, to furnish Douglas, Brown, Reynolds & Co. 15,000 ties and deliver them near the International Railroad track, and that the agreement they made with appellee was substantially this: That appellee was to come into their said contract with Doug-las, Brown, Reynolds & Co., and carry out all the provisions of that contract, they (the appellants) agreeing to furnish the timber for making the ties at their own cost, and appellee to share one-third of the net profits made under said contract. They then alleged that appellee was guilty of various breaches of the contract, and that he failed to carry it out, but aban-

doned it altogether, and that they had to complete it at great additional expense; and they reconvened and asked for damages against appellee for ten per cent. on the value of 15,000 ties contracted to be delivered to Douglas, Brown, Reynolds & Co., forfeited by Smith's failure to carry out the contract, and also for the value of 1,007 ties placed by mistake on a section of the road which was under contract to one Calder, who got pay from the road for the same, and which was lost to Grant & Easter.

There was verdict for appellee for the sum claimed in his petition, $1,529.24 and interest, amounting to $2,220.03. So much of the charge as is complained of will be found in the opinion and in appellee's brief.

*Collard & Field* and *William H. Hamman,* for appellants.—It was error to charge the jury that they could find any amount for plaintiff for getting out ties for the use of defendants, without also charging them that they must also find that Grant & Easter, or one of them, received pay for the ties so delivered, and also that they could only find plaintiff's share of such sum so received according to the contract as set out in his petition. (Herrington *v.* Holman, 25 Tex. Supp., 259, 260; Ponton *v.* Ballard, 24 Tex., 621; Tinsley *v.* Carey, 26 Tex., 350.)

*Davis, Beall & Kemp,* for appellee.

I. The charge complained of in the sixth assignment is not obnoxious to the objection stated, but is directly applicable to the issues raised and facts proven.

The plaintiff substantially alleged in his pleadings that about the 20th of June, 1871, he made a contract with defendants, in which he agreed to get up hands, wagons and teams, and "get out" railroad ties and deliver them on the right of way of the International Railroad, he to bear one-third of the expense incurred; that defendants agreed to bear two-thirds of said expense and to pay him one-third of what

they should receive for said ties; that he performed his part of said contract and delivered, as he had agreed to do, 6,680 ties, at an expense of $1,469.61, for which defendants had received the sum of $3,674. He claimed that under his contract he was entitled to receive from defendants two-thirds of $1,469.61, the amount of expenses—$979.74; one-third of $3,674, the amount defendants received for ties—$1,227; total $2,206.74; less cash admitted as received, $677.50; leaving a balance of $1,529.24. For this latter amount and interest he asked judgment.

The plaintiff, on the trial, testified to the facts as alleged.

The court, in the first branch of the charge, instructed the jury: "This is a suit by the plaintiff against the defendants, based upon a contract in parol, which is specifically set out in plaintiff's petition. You will look to plaintiff's petition to ascertain the terms and stipulations of such contract and the amount claimed by him in this suit. If you shall find from all the evidence in this case that the contract in reference to the getting out, &c., of railroad ties, set out in plaintiff's petition, was the true contract entered into between plaintiff and defendants in all particulars, and that plaintiff delivered for the use of defendants the number of ties stated in his petition, and otherwise complied with all its terms, then the plaintiff is entitled to recover of defendants the amount of money that would be due him under the terms and stipulations of said contract for the ties delivered; that is, one-third of the net value of said ties, to which will be added two-thirds of the expense of getting out the same. And to such amount as you then find due plaintiff, if any, you will add interest at the rate of eight per cent. per annum from the day said sum of money was due," &c.

The jury found for plaintiff on his contract set up and the amount by him claimed, $1,529.24, with eight per cent. interest from April 20, 1872; total $2,220.03.

II. The court did not err in that part of the charge wherein the jury were instructed in reference to the 1,007 ties.

In regard to the 1,007 ties claimed by appellants to have been placed on the wrong section by appellee and credited to one Calder, and thus lost to them, the court instructed the jury: "If you find from the evidence that defendants, by the negligence of plaintiff in failing to see that the ties delivered by him were received and inspected, (if you find that such was plaintiff's duty,) or that plaintiff placed them on the wrong section, and by such acts of plaintiff these ties were lost to defendants, you will find from the evidence the value of the ties so lost by plaintiff's negligence, and deduct same from such amount, if any, you may find for plaintiff; provided you believe from the evidence that defendants had to get out and supply, in place of those lost, others to complete their contract with Douglas, Brown, Reynolds & Co."

[The rest of the charge on this branch of the case, quoted by counsel, will be found in the opinion.]

BONNER, ASSOCIATE JUSTICE.—In the view we take of this case, it is only necessary that we notice the sixth and ninth errors assigned.

The sixth error assigned is, that "it was error to charge the jury that they could find any amount for plaintiff for getting out and delivering ties for the use of defendants, without also charging them that they must find that Grant & Easter, or one of them, received pay for the ties so delivered, and that they could only find plaintiff's share of such sum so received according to the contract as set out in his petition."

The court, in the first branch of the charge, instructed the jury: "This is a suit by the plaintiff against the defendants, based upon a contract in parol, which is specifically set out in plaintiff's petition. You will look to plaintiff's petition to ascertain the terms and stipulations of such contract and the amount claimed by him in this suit. If you shall find from all the evidence in this case that the contract in reference to the getting out, &c., of railroad ties, set out in plaintiff's petition, was the true contract entered into between

plaintiff and defendants in all particulars, and that plaintiff delivered for the use of defendants the number of ties stated in his petition, and otherwise complied with all its terms, then the plaintiff is entitled to recover of defendants the amount of money that would be due him under the terms and stipulations of said contract for the ties delivered; that is, one-third of the net value of said ties, to which will be added two-thirds of the expense of getting out the same. And to such amount as you then find due plaintiff, if any, you will add interest at the rate of eight per cent. per annum from the day said sum of money was due."

Under the terms of the contract as set out by the plaintiff himself, it devolved upon him to prove that the defendants had received from Douglas, Brown, Reynolds & Co. payment for ties which were delivered by him, before he was entitled to judgment against them.

In fact, there was testimony tending to prove that the contract between plaintiff and defendants was in the nature of a partnership, in which the risk was assumed by all alike that Douglas, Brown, Reynolds & Co. would make payment.

We are of opinion that this phase of the case was not so prominently presented in the charge of the learned judge who presided below as the allegations and evidence may have authorized.

The ninth error assigned is, that "there was error in the charge as to the credit defendants were entitled to for the 1,007 ties which one Calder got credit for."

Under this issue, the court, among other things, charged the jury: "If, however, you find from the evidence that defendants were fully informed as to the condition and their rights to the ties so lost and alleged to have gone to the credit of Calder, by reason of the negligence of plaintiff, and thus lost to them, when they executed the receipt to Douglas, Brown, Reynolds & Co., which is in evidence before you, and that said receipt included said ties or claim for their value, and that the said ties were litigated in a suit between

defendants and Douglas, Brown, Reynolds & Co., with the result of a judgment in this court against defendants, then and in such case the legal effect of said receipt and judgment is to estop defendants from denying in this suit that they had the possession and benefit of said ties; and in such case you will make due deduction against plaintiff on account of said ties, but include them in any finding you may make in his favor."

The testimony tended to prove that the litigation between the defendants and Douglas, Brown, Reynolds & Co., in regard to the 1,007 ties, was occasioned by the act of the plaintiff in delivering them upon the wrong section of the road.

The charge of the court made the result of this litigation and the receipt of Douglas, Brown, Reynolds & Co., given by the defendants, conclusive against them that they had received the possession and benefit of these ties, without regard to the question whether, in fact, they did or did not receive pay for the same.

In this, we think, there was error which may have influenced the jury.

This question should have been left open for their decision under all the facts and circumstances in testimony.

The result of this litigation between Douglas, Brown, Reynolds & Co. and defendants, and the effect of their receipt, which, as a general rule, is open to explanation, was not necessarily wholly inconsistent with the proposition that, in fact, the defendants may not have received payment from Douglas, Brown, Reynolds & Co. Even had defendants recovered judgment against them, it would not inevitably follow that they would have collected the same.

The testimony upon this point was, in our opinion, sufficiently conflicting to have required the question to have been submitted for the consideration of the jury, without having made the result of these judgments and the effect of this receipt conclusive against the defendants.

For this error the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.